UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| FRACALOSSI, | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-00336-X |
| | § | |
| MONEYGRAM PENSION PLAN, et. al., | § | |
| | § | |
| *Defendants.* | § | |

## **MEMORANDUM OPINION AND ORDER**

In this action alleging violations of Employee Retirement Investment Act ("ERISA"), defendants Viad Corp. ("Viad") and MoneyGram International, Inc. ("Moneygram") move to dismiss plaintiff Kimbra Fracalossi's ("Fracalossi") claims for her failure to state a claim on which relief can be granted (collectively, "motions to dismiss" or "motions") [Docs. No. 84 & 87].[1] The Court concludes that Fracalossi has failed to state a claim as to these defendants. The Court **DISMISSES WITH PREJUDICE** Fracalossi's claims against Viad. There is no need to replead because Fracalossi has pled her way out of court by pleading that Viad was not the plan administrator when ERISA imposed the duty Fracalossi claims was breached. Additionally, the Court **DISMISSES WITHOUT PREJUDICE** Fracalossi's claims against Moneygram. The Court grants Fracalossi leave to replead its claims against Moneygram within 14 days of this order.

---

[1] A third defendant in this case, MoneyGram Pension Plan, has not filed a motion to dismiss.

1

I.

Fracalossi's third amended complaint [Doc. No. 79] states that she was an employee at Viad for over 11 years, leaving on March 31, 2006.[2] While she was employed there, Viad maintained the Viad Corp Retirement Income Plan ("Viad Plan"), a tax qualified pension plan, in which Fracalossi was a participant.[3] The Viad Plan allowed an employee who had worked at Viad for ten years to start collecting early retirement pension payments at age fifty-five.[4]

On June 30, 2004, Viad spun off its payment services operations into a separate entity, Moneygram.[5] Fracalossi alleges the Viad Plan changed its name to MoneyGram Pension Plan ("Moneygram Plan") and that Moneygram became the plan administrator and fiduciary to Moneygram Plan on the same day.[6] Fifteen days prior to the spin-off on June 15, 2004, Viad had signed an amendment ending all service accrual for early retirement for its employees effective June 30, 2004.[7] Fracalossi alleges Viad made misrepresentations by failing to disclose the upcoming changes before the amendment and that, after the amendment, both Viad and Moneygram failed to disclose the termination of early retirement service accrual.[8] But Fracalossi does not dispute that Viad had the legal authority to amend the plan to end all service

---

[2] Third Amended Complaint ¶ 39 [Doc. No. 79].
[3] Third Amended Complaint ¶ 10 [Doc. No. 79].
[4] Third Amended Complaint ¶ 10, 21 [Doc. No. 79].
[5] Third Amended Complaint ¶ 18 [Doc. No. 79].
[6] Third Amended Complaint ¶ 34 [Doc. No. 79].
[7] Third Amended Complaint ¶ 59-62 [Doc. No. 79].
[8] Third Amended Complaint ¶ 73, 76 [Doc. No. 79].

2

accrual for early retirement.[9]

Fracalossi voluntarily left Viad on March 31, 2006.[10] Approximately nine years later, she sent a request to the Moneygram Plan administrator requesting early retirement benefits, which Moneygram Plan denied in a letter dated October 15, 2015.[11] After some administrative hassle, Fracalossi alleges Moneygram Plan sent her a letter on April 27, 2016 arguing that the June 30, 2004 amendment severed any additional service accrual for early retirement.[12] Because all service accrual was cut off on June 30, 2004, Moneygram Plan stated that Fracalossi could never have reached the ten-year requirement for early retirement benefits.[13] Fracalossi alleges this letter was the first time she was notified of this amendment.[14]

On February 3, 2017, Fracalossi sued Viad, Moneygram, and Moneygram Plan in this Court.[15] In her third amended complaint, filed on March 8, 2019, Fracalossi alleges that Moneygram and Viad breached their fiduciary duties under 29 U.S.C. § 1132(a)(3) by failing to provide her notice of the changes effectuated by the June 15, 2004 amendment in any of their summary plan descriptions.[16] Fracalossi alleges defendants' breach harmed her because, if she had known about the amendment, she would have made up for the losses through continued work and adequate retirement

---

[9] Third Amended Complaint ¶¶ 59-63 [Doc. No. 79].
[10] Third Amended Complaint ¶ 39 [Doc. No. 79].
[11] Third Amended Complaint ¶ 50 [Doc. No. 79].
[12] Third Amended Complaint ¶ 58 [Doc. No. 79].
[13] Third Amended Complaint ¶ 58 [Doc. No. 79].
[14] Third Amended Complaint ¶ 73 [Doc. No. 79].
[15] Initial Complaint [Doc. No. 1].
[16] Third Amended Complaint ¶ 73, 76, 79 [Doc. No. 79].

planning.[17] Fracalossi requests relief either through judicial reformation of the plan or, in the alternative, a surcharge against both Viad and Moneygram for retirement losses.[18] In response to this complaint, Moneygram and Viad filed motions to dismiss [Doc. Nos. 84 & 87] on March 22, 2019.

II.

With these facts and this procedural posture, the Court considers the defendants Viad and Moneygram's motions to dismiss.

A.

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19] To survive a motion to dismiss, Fracalossi must allege enough facts "to state a claim to relief that is plausible on its face."[20] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[22] "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[17] Third Amended Complaint ¶ 80 [Doc. No. 79]; Response to Moneygram's Motion to Dismiss p.21–22 [Doc. No. 90].

[18] Third Amended Complaint ¶ 82–83 [Doc. No. 79].

[19] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

4

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[23]

B.

Viad argues, among other things, in its motion to dismiss that Fracalossi has failed to show that Viad violated ERISA by breaching an alleged fiduciary duty to notify Fracalossi or Moneygram of the retirement benefit changes in the June 15, 2004 amendment. The Court agrees. Without a showing that Viad violated ERISA, Fracalossi has failed to state a claim under Rule 12(b)(6) against Viad.

The controlling provision the parties focus on here is 29 U.S.C. § 1024(b)(1)(B), one of ERISA's central disclosure provisions. Section 1024(b)(1)(B) requires the ERISA plan administrator to provide a summary description of material modifications to the ERISA plan to the plan beneficiaries within 210 days after the end of the plan year in which the change is adopted. The United States Supreme Court acknowledged in *CIGNA Corp. v. Amara* that section 1024(b)(1)(B) imposes a fiduciary duty on plan administrators to disclose material modifications and that breach of such a duty can be brought as a claim by a plan beneficiary under 29 U.S.C. § 1132(a)(3). 563 U.S. 421, 443 (2011). The text of section 1024(b)(1)(B), however, does not impose a duty to disclose such material modifications before 210 days and Fifth Circuit case law on ERISA fiduciary duties is consistent with this reading. Indeed, in declining to find a fiduciary duty under ERISA to disclose a physician compensation scheme, the Fifth Circuit in *Ehlmann v. Kaiser Foundation Health*

---

[23] *Twombly*, 550 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

*Plan of Texas* stated that "this court should not add to the specific disclosure requirements that ERISA provides." 198 F.3d 552, 555 (5th Cir. 2000). Subsequent Fifth Circuit case law has conformed to this rule. In *Lee v. Verizon Communication, Inc.*, the Fifth Circuit, in finding that pension plan fiduciaries did not have a duty to disclose material changes to be enacted in a future amendment, also noted that the fiduciaries met their duty to disclose these material changes under section 1024(b)(1)(B) after the amendment was executed. 837 F.3d 523, 534 (5th Cir. 2016).

The Court finds that Viad did not violate ERISA. Viad signed the amendment ending all service accrual for early retirement for its employees on June 15, 2004. Section 1024(b)(1)(B) obligated Viad, as a fiduciary, to disclose this allegedly material change to its beneficiaries within 210 days. However, on June 30, 2004, Viad transferred the Viad Plan to Moneygram and so was no longer a fiduciary. Thus, Viad no longer had a duty to disclose the early retirement benefit changes after the transfer. As only 15 days had passed since the amendment was executed, Viad did not violate section 1024(b)(1)(B) by not disclosing the amendment changes to its former beneficiaries.

Fracalossi's counterarguments do not pass muster. Fracalossi contends that ERISA creates an affirmative duty to disclose material changes to an ERISA plan that goes beyond the text of ERISA itself because ERISA is part statute and part trust law.[24] However, as noted earlier, the Fifth Circuit in *Ehlmann* has stated that, where ERISA provides specific disclosure requirements, no additional disclosure

---

[24] Third Amended Complaint ¶ 74, 77 [Doc. No. 79].

requirements are to be created.[25]  In other words, where ERISA speaks, trust law yields.  Here, section 1024(b)(1)(B) applied to Viad up until the June 30, 2004 plan transfer.  Afterwards, Viad was no longer a fiduciary and so did not have the disclosure obligations under section 1024(b)(1)(B).

Fracalossi also contends, citing a Department of Labor booklet, that Viad had a fiduciary duty to provide Moneygram with summary plan documents that included correct information about early retirement benefits.[26]  First, taking these allegations as true, such a duty would be owed to Moneygram.  Fracalossi has no grounds for a breach of fiduciary duty claim against Viad on this basis.  Second, the Department of Labor booklet says "[i]t provides a simplified explanation of the law and regulations" and "is not a legal interpretation of ERISA . . . ."[27]  By its own words, the booklet is not interpreting the law and so its statements on fiduciary duties do not supplant the holdings of the Fifth Circuit.

The only remaining question as to Viad is whether Fracalossi can replead.  Repleading is not allowed when a plaintiff has pled her way out of court.[28]  This is

---

[25] *Ehlmann*, 198 F.3d at 555.

[26] Third Amended Complaint ¶ 77 [Doc. No. 79]; Fracalossi's Response to Viad's Motion to Dismiss p.20-22 [Doc. No. 89]; UNITED STATES DEPARTMENT OF LABOR, EMPLOYEE BENEFITS SECURITY ADMINISTRATION, MEETING YOUR FIDUCIARY RESPONSIBILITIES 11 (2017), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf [hereinafter DOL BOOKLET].

[27] DOL BOOKLET, *supra* note 27, at 1.  In any event, the booklet indicates that any continuing duty of a fiduciary is so that the plan "can continue operations and participants have a way to interact with the plan."  *Id*. at 11.  Even if the booklet were a legal interpretation and could supplant Fifth Circuit precedent, there is no allegation that after the transfer, Moneygram Plan did not continue operations or that participants could not interact with the plan.

[28] *Calhoun v. Villa*, 761 F. App'x 297, 300-01 (5th Cir. 2019), *cert. denied*, No. 19-5689, 2019 WL 4923435 (U.S. Oct. 7, 2019).

precisely what Fracalossi has done with Viad. Fracalossi pled that Viad breached a duty that ERISA imposed on Viad's successor. Repleading would be futile.

Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Fracalossi has failed to state a claim upon which relief can be granted. Therefore, the Court **DISMISSES WITH PREJUDICE** Fracalossi's claims against Viad.[29]

C.

And what of Moneygram? It certainly cannot avail itself of Viad's argument because Moneygram was the fiduciary when the ERISA disclosure deadline occurred. But Moneygram has other arguments. One such argument is that Fracalossi has failed to establish, pursuant to section 1132(a)(3), that she suffered harm as a result of Moneygram's alleged breach of fiduciary duty under section 1024(b)(1)(B) to notify her of the material changes made when the Viad Plan became the Moneygram Plan. The Court agrees. Without a showing of harm, Fracalossi has failed to state a claim under Rule 12(b)(6) against Moneygram.

The law on ERISA claims brought under section 1132(a)(3) is complex. Section 1132(a)(3) allows a beneficiary of an ERISA plan to bring a civil action to obtain equitable relief to redress any violations arising under ERISA. Fiduciary duties under ERISA are derived both from statute and from the common law of trusts, and include duties of loyalty and care to ERISA plan beneficiaries.[30] Additionally, as noted in Part II.B., section 1024(b)(1)(B) requires the ERISA plan administrator to

---

[29] Because the Court agrees with Viad that it owed no duty to disclose under ERISA, the Court need not address Viad's other dispositive arguments.

[30] 29 U.S.C. § 1104(a)(1) (2012); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411–12 (5th Cir. 2003).

8

provide a summary description of material modifications to the ERISA plan to the plan beneficiaries within 210 days after the end of the plan year in which the change is adopted. As also noted in Part II. B., the United States Supreme Court acknowledged in *Amara* that section 1024(b)(1)(B) imposes a duty on plan administrators to disclose material modifications.[31] However, the Supreme Court in *Amara* also acknowledged that any recovery requires a "showing of actual harm."[32] The Supreme Court noted that "[t]he relevant substantive provisions of ERISA do not set forth any particular standard for determining harm" and that they could not "find a definite standard in the ERISA provision § 502(a)(3) [29 U.S.C. § 1132(a)(3)] . . . ."[33] The Supreme Court concluded that "any requirement of harm must come from the law of equity" and only clarified that harm does not always need to include detrimental reliance.[34] The Court declined to elaborate further, stating that there is too much variety among cases to establish a single standard for harm and that doing so would undermine the purpose of equity.[35]

Although the Supreme Court did not develop a harm standard in *Amara*, the harm in that case concerned a loss of ERISA plan benefits.[36] In *Amara*, the plaintiffs challenged defendant CIGNA's adoption of a new retirement plan, claiming that CIGNA gave deficient notice of changes to their benefits under the upcoming plan,

---

[31] 563 U.S. at 443.

[32] *Id.* at 444.

[33] *Id.* at 443 (alteration in original).

[34] *Id.* at 443–44.

[35] *Id.* at 445.

[36] *Id.* at 424–25.

9

which gave plaintiffs less generous benefits.[37]

The common thread in subsequent Fifth Circuit cases looking at 29 U.S.C. § 1132(a)(3) focuses on the denial of benefits as constituting harm. For instance, in *Singletary v. United Parcel Service, Inc.*, the plaintiff's life insurance claim was denied by the plan administrator because her deceased husband fell under an exclusion to the policy. 828 F.3d 342, 346 (5th Cir. 2016). The plaintiff alleged the summary plan description never mentioned the exclusion, so she was never on notice.[38] Although the Fifth Circuit acknowledged a breach of fiduciary duty claim under section 1132(a)(3) was never raised, it went out of its way to say it could have been, stating that a claim under section 1132(a)(3) alleging a deficient summary plan description seeks equitable relief by estopping application of a benefits plan provision.[39]

Likewise, in *Manuel v. Turner Industries Group, L.L.C.*, the plaintiff was denied his claim for long-term disability benefits because of a preexisting condition exclusion. 905 F.3d 859, 863 (5th Cir. 2018), *reh'g denied* (Nov. 2, 2018). The plaintiff alleged, among other things, that enforcement of the plan would be inequitable because the summary plan description did not include the preexisting condition exclusion and so was deficient.[40] The Fifth Circuit found plaintiff's summary plan

---

[37] *Id.* at 424.

[38] *Singletary*, 828 F.3d at 346.

[39] *Id.* at 349.

[40] *Manuel*, 905 F.3d at 865.

document deficiency claims to be cognizable under section 1132(a)(3) and remanded the case back to the district court for further consideration on the merits.[41]

Lastly, in the case Fracalossi cites in her response to Moneygram's motion to dismiss, *Gearlds v. Entergy Services, Inc.*, the plan administrator denied the plaintiff his medical benefits approximately five years after he entered early retirement. 709 F.3d 448, 449–50 (5th Cir. 2013). The plaintiff alleged the plan administrator breached its fiduciary duty by misrepresenting that the plaintiff would receive health care benefits if he retired early.[42] The Fifth Circuit, however, focused its analysis only on whether a surcharge is an adequate remedy and did not look into the adequacy of the breach of fiduciary duty claim, leaving that to the district court.[43] Even so, the facts of the case still focus on the denial of benefits being the harm.

These Supreme Court and Fifth Circuit cases focus on the loss or denial of benefits as being the harm itself, whether it is a denial of insurance claims or being placed on a less generous retirement plan. This Court falls in line with this precedent and finds that any harm alleged under 29 U.S.C. § 1132(a)(3) must be the loss or denial of benefits.

Fracalossi alleges her harm not to be a denial or loss of benefits; rather, she claims she lost the opportunity to continue working to better enable retirement planning. As her remedy, Fracalossi seeks reformation of the Moneygram Plan or a surcharge against Moneygram for retirement losses. Supreme Court and Fifth

---

[41] *Id.* at 866.

[42] *Gearlds*, 709 F.3d at 450.

[43] *Id.* at 451–52.

11

Circuit precedent establish that the harm suffered and the relief sought due to a fiduciary breach must be identical. If a plaintiff is denied benefits, the remedy amounts to the granting of benefits. If a plaintiff loses benefits, the remedy amounts to the restoration of benefits. Fracalossi's alleged harm (the lost opportunity to work) severs that close tie between harm and remedy (benefits or their money equivalent) by expanding what constitutes harm. Such an expansion has not been sanctioned by the Supreme Court or the Fifth Circuit, and with good reason. Article III courts fashion remedies that redress injuries. In other ERISA cases, the Fifth Circuit and Supreme Court found proper remedies for the injury of wrongful denials or loss of benefits to be the granting of benefits or a surcharge that was the money equivalent of benefits.[44] Here, Fracalossi wants a remedy (benefits or their money equivalent) that is not redressing the harm she claims (lost opportunity to keep working). Of the various remedies ERISA affords, the chance to keep working and saving for retirement is not one of them. Thus, Fracalossi has not alleged a cognizable injury on which to base her claims against Moneygram and so, pursuant to Federal Rule of Civil Procedure 12(b)(6), Fracalossi has failed to state a claim upon which relief can be granted.[45]

The remaining question is whether Fracalossi could properly plead harm and remedy in an amended complaint. It may well be that Fracalossi pled her harm the

---

[44] *CIGNA*, 563 U.S. at 438, 440-41, 444; *Singletary*, 828 F.d at 349; Manuel, 905 F.3d at 865-66; *Gearlds*, 709 F.3d at 451-52.

[45] Because the Court agrees with Moneygram that Fracalossi has not shown harm, the Court need not address Moneygram's other dispositive arguments.

way she did (inability to keep working and better plan for retirement) because she does not dispute that Viad had authority under ERISA to cease accrual of service credit for qualifying for early retirement. In other words, it may be that Fracalossi knew she never qualified for early retirement benefits and so did not plead that as her harm. Regardless of Fracalossi's possible motivations, out of prudence, the Court believes Fracalossi should be entitled to replead in an attempt to match her harm with a redressable denial of benefits. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Fracalossi's claims against Moneygram. However, the Court grants Fracalossi leave to replead its claim against Moneygram within 14 days of this order.[46]

### III.

For the reasons stated above, the Court **DISMISSES WITH PREJUDICE** Fracalossi's claims against Viad and **DISMISSES WITHOUT PREJUDICE** Fracalossi's claims against Moneygram. The Court grants Fracalossi leave to replead within 14 days of this order.

**IT IS SO ORDERED** this 29th day of October 2019.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[46] Of course, Fracalossi may include in her repleading the claim against the current third defendant, Moneygram Plan, because Moneygram Plan did not move to dismiss that claim.

13